Marvin KAY, Plaintiff-Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant-Appellee.

No. 98-9233

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

May 25, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:93-CV-326-HLM), Harold L. Murphy, Judge.

Before BIRCH, CARNES and BARKETT, Circuit Judges.

CARNES, Circuit Judge:

Dale Buchanan, an attorney, represented plaintiff Marvin Kay on his claim for Social Security benefits. As a result of Buchanan's efforts, Kay was awarded over $52,000 in past-due benefits. Buchanan moved for attorney's fees, pursuant to 42 U.S.C. § 406(b). The district court, applying the "lodestar" method, awarded Buchanan $3,990.13 in attorney's fees. On appeal, we join the majority of circuits in holding that reasonable attorney's fees under § 406(b) should be calculated using the "lodestar" approach, not the "contingent fee" approach. We conclude that the district court's award was not an abuse of discretion.[1]

## I. BACKGROUND

Buchanan, an attorney with considerable experience in government and private practice dealing with Social Security claims, began representing Kay on his claim in 1992, when he appeared before an Administrative Law Judge seeking disability benefits for Kay, who had a claimed disability onset date of March 11, 1991. Kay's claim and an administrative appeal were unsuccessful. Buchanan then brought suit on behalf of Kay in the district court, which remanded Kay's claim to the Commissioner for further

---

[1]We agree with the parties that this case is suitable for disposition without oral argument. *See* F.R.A.P. 34(a)(2)(C); 11th Cir. R. 34-3(b).

proceedings and awarded Buchanan attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

In February 1995, the Administrative Law Judge held an additional hearing and found that Kay was eligible for benefits, with a disability onset date of February 1994. Buchanan appealed the finding with respect to the disability onset date. The Appeals Council denied review, and Buchanan again filed suit in the district court. The district court again ordered the case remanded to the Commissioner, and on August 30, 1996, the Administrative Law Judge concluded that Kay's disability onset date was in March 1991. Kay was awarded $52,305.00 in past-due benefits, of which 25 percent, or $13,076.25, were set aside pending determination of Buchanan's entitlement to attorney's fees.

Buchanan had agreed to represent Kay on a contingency basis. Kay's contract with Buchanan states:

> I agree to pay my attorney an amount equivalent to twenty-five percent (25%) of the total amount of the past due benefits accrued from the time [of] disability or the first entitlement started through the time my benefits are received or $1500.00, whichever is greater. I understand that this fee includes 25% of *ALL* my Social Security benefits including those paid on my earnings record or on any account for my dependents, and those paid in the form of Supplemental Security Income. I understand that the minimum fee, should I win will be $1500.00.... I understand that Dale L. Buchanan and Associates is not going to charge me a fee in advance and that they will not charge me any fee at all except the amount for expenses unless I win.

Buchanan moved for attorney's fees under section 206(b) of the Social Security Act, 42 U.S.C. § 406(b). He requested $8,500.00 for 26.6 hours of work performed in connection with his representation of Kay before the district court. That figure is about one-third smaller than the 25 percent contingency fee of $13,076.25 which he might have claimed. But Buchanan's fee request still relied on his contingency agreement with Kay, and Buchanan argued that the claimed fee of $8,500.00 must be reasonable because it was substantially less than the amount he could have requested. The Commissioner objected to the requested amount, arguing that Buchanan should be compensated for 24.1 hours of court-related work at an hourly rate of $150.00, for a total of $3,615.00.

Employing the lodestar method, the magistrate judge recommended that Buchanan receive $3,990.00, representing 26.6 hours of work at $150.00 per hour. While noting that "the prevailing market rate for the

Rome Division in the Northern District of Georgia .... has never exceeded $95.00 per hour," the magistrate judge increased the rate to reflect the contingent nature of Buchanan's representation, in light of which he might have recovered no fees at all.

The district court agreed that the proper method of calculating Buchanan's fees was the lodestar method, not the contingent fee approach, but applied an hourly rate of $95.00 per hour, reasoning that "$95.00 is the amount the Court customarily awards to attorneys of comparable skills, experience, and reputation for similar services." Multiplying this figure by 26.6 hours, the district court arrived at a lodestar amount of $2,527.00. It concluded that the lodestar amount should be multiplied by an adjustment figure of 1.579, especially since Buchanan had been acting on a contingency basis. Applying that adjustment, the court awarded Buchanan $3,990.13 in attorney's fees. Buchanan filed this appeal, though Kay, as the claimant, is the named appellant.

## II. STANDARD OF REVIEW

We review questions of statutory interpretation *de novo*. *See, e.g., United States v. Alborola-Rodriguez,* 153 F.3d 1269, 1271 (11th Cir.1998). We review awards of attorney's fees for abuse of discretion. *See American Civil Liberties Union v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999). We will find that the district court abused its discretion if it has not applied the proper standard, or has failed to follow proper procedures in making its determination, or has based its award on findings of fact that are clearly erroneous. *Id.*

## III. ANALYSIS

A.    THE LODESTAR METHOD IS TO BE APPLIED IN DETERMINING ATTORNEY'S FEES UNDER 42 U.S.C. § 406(b)

As noted above, Buchanan agreed to take Kay's case on a contingent fee basis. In the event Kay's claim succeeded, he would owe Buchanan a minimum of $1,500.00 and a maximum of 25 percent of the past-due benefits awarded. If he lost, he would owe Buchanan only his expenses. Buchanan argues that the district court erred by applying the lodestar method to determine his reasonable fees for his work in this case.

**3**

He contends that the district court should have employed the contingency fee method and treated his requested fee as presumptively reasonable.

The Social Security Act provides for the recovery of attorney's fees in the following terms:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, ...

42 U.S.C. § 406(b)(1)(A). Beyond this capacious language, however, the Act offers no further guidance on what amounts to a "reasonable fee" for successful Social Security claims.

The circuits have split over the proper method for calculating attorney's fees under 42 U.S.C. § 406(b). At least five circuits, which is a majority of those that have addressed the issue, have adopted the "lodestar" method.[2] Under that method, the court arrives at a lodestar figure by multiplying "the number of hours reasonably expended by a reasonable hourly rate. The district court may then adjust the resulting 'lodestar' depending upon a variety of factors." *Andrews v. United States,* 122 F.3d 1367, 1375 (11th Cir.1997) (internal citations omitted) (attorney's fees claimed under Equal Access to Justice Act) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)).

Three circuits, however, have adopted the "contingent fee" method.[3] Under that method, where a Social Security benefit claimant has signed a contingency fee agreement for an amount falling within the statutory cap of 25 percent of the claimant's past-due benefits, the court will defer to the contract amount of fees unless it is unreasonable. *See, e.g., Wells v. Sullivan,* 907 F.2d 367, 370 (2d Cir.1990). Although each court taking this approach uses slightly different language, all essentially erect a rebuttable presumption that

---

[2]*See, e.g., Hubbard v. Shalala,* 12 F.3d 946, 948 (10th Cir.1993); *Brown v. Sullivan,* 917 F.2d 189, 191-93 (5th Cir.1990); *Cotter v. Bowen,* 879 F.2d 359, 363 (8th Cir.1989); *Craig v. Secretary of Health and Human* Servs., 864 F.2d 324, 327-28 (4th Cir.1989); *Starr v. Bowen,* 831 F.2d 872, 874 (9th Cir.1987). *See also Ramos Colon v. Secretary of Health and Human Servs.,* 850 F.2d 24, 26 (1st Cir.1988) (rejecting deference to contingent fee agreement but not singling out lodestar method as the appropriate method).

[3]*See, e.g., Wells v. Sullivan,* 907 F.2d 367, 370 (2d Cir.1990); *McGuire v. Sullivan,* 873 F.2d 974, 980 (7th Cir.1989); *Rodriquez v. Bowen,* 865 F.2d 739, 746 (6th Cir.1989) (en banc).

a contingency fee arrangement of 25 percent or less is a reasonable fee, absent evidence suggesting otherwise. *See, e.g., id.* at 371 ("[T]he district court's determination of a reasonable fee under § 406(b) must begin with the [contingency fee] agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable."); *McGuire v. Sullivan,* 873 F.2d 974, 981 (7th Cir.1989) (the court "should defer to the parties' intentions where reasonable.... [T]he fee agreement entered into by the parties should be the starting place for a court's review but that amount may be reduced if appropriate."); *Rodriquez v. Bowen,* 865 F.2d 739, 746 (6th Cir.1989) (en banc) ("[I]f the agreement states that the attorney will be paid twenty-five percent of the benefits awarded, it should be given the weight ordinarily accorded a rebuttable presumption."). The amount awarded pursuant to a contingency fee agreement may be reduced where factors such as ineffective counsel or a potential windfall to the claimant's attorney are present. *See, e.g., Rodriquez,* 865 F.2d at 746.

Until now, we have not taken a position on the matter.[4] Upon examination, we conclude that the majority approach is the right one. Accordingly, we hold that the lodestar method applies to the determination of attorney's fees in Social Security cases under 42 U.S.C. § 406(b), even where counsel and the claimant contractually agreed to a contingency fee arrangement. As we discuss below, however, the existence of a contingency agreement may be one factor that is properly considered in determining whether to increase the lodestar figure.

Our conclusion that the lodestar method is the appropriate one is compelled by a number of factors. We begin, as we must, with the statutory text itself. *See Lyes v. City of Riviera Beach, Florida,* 166 F.3d 1332, 1337 (11th Cir.1999) (en banc) (quoting *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir.1998) (en banc)). Although, as we have mentioned, § 406(b) provides little guidance, it does provide *some*

---

[4]District courts in this circuit have divided over the correct approach. *Compare Krig v. Sullivan,* 143 F.R.D. 270 (N.D.Fla.1992) (employing lodestar method), *and Frazier v. Sullivan,* 768 F.Supp. 1511 (M.D.Ala.1991) (same), *with Kelly v. Sullivan* (S.D. Ala. June 29, 1993) (employing contingent fee method), *and Williams v. Sullivan* (S.D.Ala. Oct. 29, 1991) (same).

guidance. It says we may determine and award "a *reasonable* fee" for an attorney's services, and it caps that fee at 25 percent of a claimant's past-due benefits. This language indicates courts have an affirmative duty to ensure that a Social Security claimant's attorney receives only a "reasonable" fee, regardless of the contractual arrangements the claimant and his attorney may have reached. *See Coup v. Heckler,* 834 F.2d 313, 324 (3d Cir.1987) (noting that § 406(b) is "a statutory interference with the attorney client contractual relationship which would otherwise be determined by the marketplace for legal services."). So the statutory language itself, broad though it may be, slightly favors an approach such as the lodestar method over one which assigns any presumptive reasonableness to the parties' fee agreement.

As the text of the statute makes clear, our duty under § 406(b) to scrutinize a fee claim for reasonableness extends to all fee claims up to and including the 25 percent maximum. It thus makes little sense to argue, as Buchanan does, that any award under the maximum amount is presumptively reasonable. The statutory maximum is an absolute cap, *see Craig v. Secretary, Dept. of Health and Human Servs.,* 864 F.2d 324, 327 (4th Cir.1989), not a "benchmark" by which we assess the reasonableness of a fee. *See Rodriquez,* 865 F.2d at 748 (Wellford, J., con- curring in part and dissenting in part).

Our reading of the statutory language of § 406(b) is also informed by the interpretation given a similar reasonableness requirement in another class of attorney's fees provisions—the so-called "fee-shifting" provisions. *See, e.g.,* 42 U.S.C. § 1988 (allowing courts to award the prevailing party in civil rights cases "a reasonable attorney's fee"). Courts interpreting those provisions have concluded that the lodestar method is better suited to the courts' independent determination of what constitutes a "reasonable" fee, and should be applied even where the prevailing party signed a contingency fee contract. *See, e.g., Blanchard v. Bergeron,* 489 U.S. 87, 91-96, 109 S.Ct. 939, 943-46, 103 L.Ed.2d 67 (1989). Although those provisions are not identical to § 406(b), the appearance of the same term of art—"reasonable"—in a similar context makes it appropriate to apply the same approach when determining what constitutes a reasonable fee here. *See, e.g., Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992)

**6**

(applying same interpretation to identical words in similar statutes); *see also Frazier v. Sullivan,* 768 F.Supp. 1511, 1515 n. 13 (M.D.Ala.1991).

Our preference for the lodestar method also reflects the fact that § 406(b) is designed to protect a particularly vulnerable class of claimants. Many claimants in Social Security benefits cases are minors, or incompetent to manage their affairs, or disadvantaged by lack of education or by physical or mental impairments. *See, e.g., Cotter v. Bowen,* 879 F.2d 359, 360 (8th Cir.1989) ("Section 406 is a *parens patriae* limit on the amount of fees an attorney may receive from a disability claimant, usually an individual of limited resources, who suffers the additional handicap of a severe physical or mental disability."); *Rodriquez,* 865 F.2d at 748 (Wellford, J., concurring in part and dissenting in part); *Krig v. Sullivan,* 143 F.R.D. 270, 276 (N.D.Fla.1992); *Frazier,* 768 F.Supp. at 1516. Congress's evident concern with the protection of this special class of claimants is reflected in its decision to interfere with the "attorney client contractual relationship," *Coup,* 834 F.2d at 324. The "relative poverty and ill health of most social security claimants," *Krig,* 143 F.R.D. at 276, reduces the likelihood that claimants will negotiate fee agreements with "a complete understanding of the nature of the arrangements or their ability to negotiate the terms of such contracts." *Frazier,* 768 F.Supp. at 1516.

In addition, unlike attorney's fees awarded pursuant to fee-shifting statutes, the fee under § 406(b) is paid from the claimant's disability award itself. That fee is drawn from what is sometimes "an already-inadequate stipend for the support and maintenance of the claimant and his dependents," *Allen v. Shalala,* 48 F.3d 456, 459 (9th Cir.1995) (internal quotation and citation omitted). The fact that we are required to scrutinize the reasonableness of an attorney's fee drawn from an already limited fund further militates against treating contingency arrangements in § 406(b) claims as presumptively reasonable, and points in favor of the lodestar method.

Although we adopt the lodestar method in determining a "reasonable" attorney's fee under § 406(b), the existence of a contingent fee agreement is not entirely irrelevant. Courts may adjust the lodestar figure

upward or downward to reflect a number of different factors, including the existence of a contingency fee agreement. In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), we identified twelve factors a court may consider in determining the reasonableness of an attorney's fee award in a particular case. They are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions;
>
> (3) the skill required to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney due to the acceptance of the case;
>
> (5) the customary fee;
>
> (6) whether the fee is fixed or contingent;
>
> (7) time limitations imposed by the client or the circumstances;
>
> (8) the amount involved and the results obtained;
>
> (9) the experience, reputation and ability of the attorney;
>
> (10) the undesirability of the case;
>
> (11) the nature and length of the professional relationship with the client;  and
>
> (12) awards in similar cases.

*Johnson,* 488 F.2d at 717-19.  Though the lodestar calculation remains the starting point and "centerpiece of attorney's fee awards" under § 406(b), the factors identified in *Johnson* "may be relevant in adjusting the lodestar amount."  *Blanchard,* 489 U.S. at 94, 109 S.Ct. at 945.

We caution, however, that the "contingency-fee factor is simply that, a factor," *id.* at 93, 109 S.Ct. at 944, and its presence in a given case would not necessarily require an adjustment in order to produce a reasonable fee;  the lodestar amount itself may suffice.  Moreover, "the court must, where a contingent fee

agreement is involved, articulate the weight of contingency" in adjusting the lodestar figure. *See, e.g., Brown v. Sullivan,* 917 F.2d 189, 193 (5th Cir.1990); *Cotter,* 879 F.2d at 363.[5]

Thus, although the lodestar figure constitutes the district court's initial (and often final) estimate of the reasonable attorney's fees to be awarded under § 406(b), a claimant's attorney may argue that one or more factors support an upward adjustment—just as the Secretary may argue that a downward adjustment is appropriate. This approach ensures that the court will independently consider the reasonableness of the claimed fee, while retaining the authority to modify the lodestar figure to reflect the full measure of effort and risk undertaken by the attorney. That promotes Congress's twin goals in enacting § 406(b): to "limit attorney's fees, ... while encourag[ing] effective legal representation by ensuring that attorneys will receive a fee for their representation." *Shoemaker v. Bowen,* 853 F.2d 858, 860 (11th Cir.1988) (internal quotation and citation omitted); *see also Watford v. Heckler,* 765 F.2d 1562, 1566 (11th Cir.1985) (citing S.Rep. No. 404, 89th Cong., 1st Sess. 422 (1965), reprinted in 1965 U.S.S.C.A.N. 1943, 2062).

In sum, we conclude that district courts calculating reasonable attorney's fees under 42 U.S.C. § 406(b) should employ the lodestar method, and they may adjust the lodestar figure to reflect the *Johnson*

---

[5]In *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court held that a contingency enhancement of an attorney's fee award under a typical federal fee-shifting statute is incompatible with the lodestar method of calculating reasonable attorney's fees. *Dague,* 505 U.S. at 562-67, 112 S.Ct. at 2641-44. The Court did not say anything about the applicability of the contingency fee factor to non-fee-shifting provisions such as § 406(b). The only circuit to squarely address the relevance of *Dague* to § 406(b) concluded that "[t]here is nothing inconsistent with the scheme of § 406(b)(1) in allowing the court to consider the existence of a contingency fee agreement, as long as it balances that factor with the others we have identified." *Allen,* 48 F.3d at 460.

We agree. Unlike the fee-shifting statutes, which create a market for attorney's work on designated issues by guaranteeing a return from the losing party, § 406(b) "strikes a balance between encouraging lawyers to represent disability claimants, and protecting the already inadequate stipend most claimants receive." *Id.* We think a lodestar approach to determining attorney's fees under § 406(b), combined with a possible enhancement for contingency agreements, best strikes that balance. Although our approach here thus differs from the treatment of contingency agreements under the fee-shifting statutes since *Dague,* § 406(b) must be interpreted in light of a different set of "competing equities" than those statutes. *See Flight Attendants v. Zipes,* 491 U.S. 754, 761, 109 S.Ct. 2732, 2736, 105 L.Ed.2d 639 (1989) (interpreting a fee-shifting statute "in light of the competing equities that Congress normally takes into account").

**9**

factors, though an adjustment will not always be necessary. The weight of any adjustments for factors such as a contingency fee agreement should be clearly articulated in the order awarding fees.

B.      APPLICATION OF THE LODESTAR METHOD IN THIS CASE

The district court in this case correctly chose to employ the lodestar method in reviewing Buchanan's claim for attorney's fees pursuant to § 406(b). We conclude the district court's award of $3,990.13 was not an abuse of discretion.

The district court concluded that Buchanan had properly requested compensation for 26.6 hours for his work before the court. Turning to the reasonable hourly rate, it correctly stated Buchanan was entitled to "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *American Civil Liberties Union,* 168 F.3d at 436 (quoting *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 1547-48 n. 11, 79 L.Ed.2d 891 (1984))). The district court arrived at a reasonable hourly rate of $95.00. It justified this amount with the statement that "$95.00 is the amount the Court customarily awards to attorneys of comparable skills, experience, and reputation for similar services." While our concern is with local market rate, not custom, we note that the magistrate judge specifically stated that "the prevailing market rate for the Rome Division in the Northern District of Georgia .... has never exceeded $95.00 per hour." A district court is entitled to " 'consider its own knowledge and experience concerning reasonable and proper fees' " in determining the reasonable hourly rate. *See Norman,* 836 F.2d at 1303 (quoting *Campbell v. Green,* 112 F.2d 143, 144 (5th Cir.1940)). We find no abuse of discretion in the determination of the reasonable hourly rate.

Multiplying 26.6 hours by the reasonable hourly rate of $95.00, the district court arrived at a lodestar figure of $2.527.00. It concluded, on the basis of the *Johnson* factors and with a special emphasis on the contingency fee agreement in this case, that the lodestar figure should be given an upward adjustment of

1.579, resulting in an award of $3,990.13. We conclude that the district court applied the correct method in determining Buchanan's reasonable fee, and did not abuse its discretion in arriving at its award.

## IV. CONCLUSION

AFFIRMED.